OPINION
{¶ 1} Appellant, Eric G. Eckard, appeals from the November 18, 2002 judgment entry of the Chardon Municipal Court, in which he was sentenced for criminal damaging and aggravated menacing.
 {¶ 2} On June 19, 2000, a complaint was filed charging appellant with criminal damaging, a misdemeanor of the first degree, in violation of R.C. 2909.06(A)(1)(B); two counts of aggravated menacing, misdemeanors of the first degree, in violation of R.C. 2903.21(A); and menacing, a misdemeanor of the fourth degree, in violation of R.C. 2903.22(A). A pretrial hearing was held on September 12, 2000. A bench trial was held on November 30, 2000. Pursuant to the trial court's January 12, 2001 judgment entry, appellant was found guilty of criminal damaging and one count of aggravated menacing, in which the remaining two counts were dismissed. On June 21, 2002, this court reversed and remanded the trial court's decision on the issue of the investigation of the crime scene.
 {¶ 3} On October 3, 2002, appellant filed a waiver of his right to participate in the retrial and authorized his counsel to submit the case on the videotape and transcript of the first trial. An agreement pursuant to rules of superintendence was filed on October 3, 2002, in which the parties agreed to such new trial being conducted via the trial court's view of the videotape of the original trial based on Civ.R. 40 and Rule of Superintendence 12(B).
 {¶ 4} A new bench trial commenced on October 3, 2002. Pursuant to the October 8, 2002 trial court's judgment entry, appellant was found guilty of both criminal damaging and aggravated menacing.
 {¶ 5} The facts emanating from the record are as follows: on June 12, 2000, Clifford R. Mestin ("Clifford") and his friend, William Roth ("William"), both seniors at Kenston High School, left school at approximately 1:45 p.m. in Clifford's 1993 Ford Escort. The weather was rainy, foggy, and very humid. According to Clifford's testimony, he turned on his defroster in order to see out of the front windshield. When Clifford and William were leaving the school parking lot, Clifford could not see well at first out of the front windshield. When Clifford turned left on Snyder Road, he could see through the front windshield, but the side windows of his vehicle were still somewhat foggy. At that time, Clifford's car hit appellant's empty trash can in front of his house, which was on or near the white berm line on the road. Because Clifford did not believe that he did any damage to appellant's trash can and testified that he did not even think it fell over, he did not stop to inspect it for any possible damage. Clifford proceeded down Snyder Road and turned left on Bainbridge Road in order to drop off William at his house on Indian Hills Drive.
 {¶ 6} According to Clifford's testimony, as he and William proceeded down Bainbridge Road, he noticed in his rear view mirror a white pickup truck, driven by appellant, following his vehicle within two to three feet. In order to increase the distance between his vehicle and appellant's truck, Clifford increased his speed from approximately forty-five m.p.h. to sixty m.p.h. However, appellant's truck also increased its speed and continued to follow Clifford's vehicle very closely. Clifford turned left on Indian Hills Drive and appellant's truck followed. Appellant's truck passed Clifford's vehicle and forced it off the road. Clifford slammed on his brakes and stopped partially on the road and on the berm.
 {¶ 7} Appellant stopped, exited his truck, and ran toward Clifford's car. Appellant repeatedly screamed obscenities and threats in a very angry tone of voice. Pursuant to Clifford's testimony, as well as the police report, appellant stated, "you're gonna fucking pay for this you little bitch * * * you're fucking dead * * *." Appellant ran to the driver's side door of Clifford's vehicle, which Clifford locked, and tried to open the door. Appellant ripped one of the windshield wipers off of Clifford's vehicle, then ran around to the passenger side of the car, where William was seated, and punched the window. Appellant tried to open the passenger side door, but William locked it. Appellant next punched through the windshield three or four times, which caused the glass to shatter and spray all over Clifford and William. Clifford testified that he was "terrified." William also testified to the effect that he was also very scared. William believed that appellant was going to physically hurt both Clifford and himself very badly because of what he did to Clifford's vehicle.
 {¶ 8} Based on Clifford's testimony, as appellant continued to pound on his car, two other men exited appellant's truck and approached Clifford's vehicle with what he believed were either bats or clubs. At that time, Clifford put his car in reverse and took off. Clifford and William decided to go to the school rather than the police station because the school was closer and Clifford thought a police officer would be there directing traffic. William Kuhns ("Kuhns"), principal at Kenston High School, testified that Clifford and William spoke to him and reported the incident when they returned to school. Kuhns stated that the boys were very upset and scared, almost shaken, and talked really fast. Kuhns went to the end of the school driveway with Clifford and William, who indicated that the incident occurred at the entrance to appellant's driveway.
 {¶ 9} James Burke ("Burke"), who resides at 17633 Indian Hills Drive, lives two doors down from William's house. Burke was home on June 12, 2000, at about 2:00 p.m., and witnessed the incident at issue from his second floor bedroom window, after hearing all the noise outside. Burke saw Clifford's vehicle on the side of the road and appellant's truck in front of it. Burke witnessed appellant "very abruptly" exit his truck and run back to Clifford's car, yelling with his arms raised in the air. Burke saw a passenger get out of appellant's truck, who stood next to it. According to Burke, appellant was screaming in front of Clifford's vehicle for about "fifteen (15) seconds or so." Burke testified that appellant struck Clifford's car on both sides and in front with his hands. Burke stated that he saw appellant strike the passenger side two or three times and the hood or windshield twice. After about three or four minutes, Clifford's car left and appellant followed.
 {¶ 10} Bradley Roth ("Bradley"), William's father, went to the school with William after 5:00 p.m., on June 12, 2000, to look at the damage to Clifford's car, which was in the parking lot. A tow truck was there, as well as Clifford and his father, and they all surveyed the damage to the vehicle. The windshield of Clifford's car was shattered and pushed in, the driver's side and top were dented and scratched, one of the windshield wipers was missing and the other one was broken, and the fuel line was damaged. As Bradley and William were leaving the school, William saw appellant and told Bradley who he was. Bradley stopped his van and got out. According to Bradley's testimony, appellant told him that William was a terrible kid and that he was a terrible father. Bradley stated that appellant "challenged me to step over on his property so he could kick my fucking ass." Appellant, however, testified that Bradley called him "a fucking asshole." Also, Bradley said that appellant threatened William that he would not walk away the next time.
 {¶ 11} Appellant testified that Clifford's vehicle was traveling at a high rate of speed when he hit his garbage can. Appellant jumped into his truck and followed Clifford's car in order to identify the boys and indicate to them that their behavior was dangerous not only to appellant, but to appellant's children, as well as the neighborhood in general. When Clifford's car came to a stop because a mail truck was in front of it, appellant exited his truck to admonish Clifford and William and denied making any threats or frightening them in any way. Appellant stated that after he approached Clifford's car, it began coming toward him and in order to avoid injury, he jumped up on the hood of the vehicle. Appellant testified that he grabbed for whatever he could and broke a windshield wiper. Appellant stressed that he punched the windshield in an attempt to get Clifford's car to stop. Appellant admitted that he yelled at Clifford and William because he was outraged and called them "a couple of assholes." Appellant testified that the driveway viewed by the prosecuting witnesses and the court during the first trial was in fact his neighbor's driveway rather than his. Also, appellant stated that if he had to do it all over again, he would not have pulled in front of Clifford's car so that there would have been a more peaceful ending.
 {¶ 12} On November 18, 2002, appellant was sentenced on the charge of criminal damaging to a fine of $300 and costs, which were both suspended, a jail sentence of ninety days, which was also suspended, and two years probation. On the charge of aggravated menacing, appellant was sentenced to a fine of $1,000, of which $600 was suspended, one hundred eighty days in jail, of which one hundred twenty days were suspended, ten days in jail with work release for the ensuing twenty days and house arrest for thirty days. Both sentences were to be served concurrently. On November 26, 2002, appellant filed a motion to stay execution, which was granted on November 27, 2002. Pursuant to the trial court's November 18, 2002 judgment entry, appellant filed a timely notice of appeal on November 27, 2002, and makes the following assignments of error:
 {¶ 13} "[1.] The court abused its discretion in sentencing [appellant].
 {¶ 14} "[2.] The verdict of the court was against the manifest weight of the evidence.
 {¶ 15} "[3.] The court improperly failed to convict [appellant] of lesser included offenses."
 {¶ 16} In his first assignment of error, appellant argues that when a court ignores the sentencing factors set forth in R.C. 2929.22, the sentencing is an abuse of discretion. Appellant contends that he showed remorse and should not have blocked Clifford's car. Also, appellant stresses that he even apologized at the sentencing hearing in the first case.
 {¶ 17} R.C. 2929.22 sets forth factors which may be considered by the court before imposing a sentence for a misdemeanor and states that:
 {¶ 18} "(A) In determining whether to impose imprisonment or a fine, or both, for a misdemeanor, and in determining the term of imprisonment and the amount and method of payment of a fine for a misdemeanor, the court shall consider the risk that the offender will commit another offense and the need for protecting the public from the risk; the nature and circumstances of the offense; the history, character, and condition of the offender and the offender's need for correctional or rehabilitative treatment; any statement made by the victim under sections 2930.12 to 2930.17 of the Revised Code, if the offense is a misdemeanor specified in division (A) of section 2930.01 of the Revised Code; and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on the offender.
 {¶ 19} "(B)(1) The following do not control the court's discretion but shall be considered in favor of imposing imprisonment for a misdemeanor:
 {¶ 20} "(a) The offender is a repeat or dangerous offender.
 {¶ 21} "* * *
 {¶ 22} "(C) The criteria listed in divisions (C) and (E) of section2929.12 of the Revised Code that mitigate the seriousness of the offense and that indicate that the offender is unlikely to commit future crimes do not control the court's discretion but shall be considered against imposing imprisonment for a misdemeanor.
 {¶ 23} "* * *
 {¶ 24} "(E) The court shall not impose a fine in addition to imprisonment for a misdemeanor unless * * * the offense has proximately resulted in physical harm to the person or property of another * * *."
 {¶ 25} R.C. 2929.12(C) states that the sentencing court shall consider all of the following that apply:
 {¶ 26} "(1) The victim induced or facilitated the offense.
 {¶ 27} "(2) In committing the offense, the offender acted under strong provocation. * * *."
 {¶ 28} Furthermore, the sentencing court shall consider whether the offender shows no genuine remorse for the offense. R.C. 2929.12(E)(5).
 {¶ 29} State v. Bacon (1996), 109 Ohio App.3d 877, 879, states: "`[w]here the sentence imposed by the trial court is within the limits prescribed by statute, the court of appeals cannot hold that the trial court abused its discretion by imposing too severe a sentence.' * * * However, in sentencing a defendant to jail time on a misdemeanor, the trial court judge must consider all the factors in R.C. 2929.22 and R.C.2929.12(C). * * * `A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12.' * * *." (Citations omitted.)
 {¶ 30} In the case at bar, it is clear from its February 5, 2001 original sentencing transcript, and is presumed from the November 18, 2002 judgment entry, that the trial court did consider the required criteria based on R.C. 2929.22. Pursuant to R.C. 2929.22(A), the trial court reviewed at great length the nature and circumstances of the offense, as well as considered the risk that appellant would commit another offense and the need for protecting the public from that risk. Because appellant was convicted of aggravated menacing, a violation of R.C. 2903.21 and a misdemeanor listed in R.C. 2930.01(A), the statements made by Clifford and William were properly considered by the trial court in determining appellant's misdemeanor sentence, based on R.C. 2929.22(A). It is also important to note that it was proper for the trial court, pursuant to R.C. 2929.22(E), to impose a fine in addition to imprisonment since the offense proximately resulted in physical harm to Clifford's property.
 {¶ 31} The transcript reflects that the trial court considered R.C. 2929.12(C) and (E) by allowing work release and ordering house arrest, even though this statute does not control the court's sentencing discretion. In the instant matter, pursuant to R.C. 2929.12 (C)(1) and (2), Clifford and William did not induce or facilitate the offense, and thus, appellant did not act under strong provocation. Also, based on the foregoing facts, it is questionable whether appellant truly showed agenuine remorse for the offense he committed. (Emphasis added). Therefore, it was proper for the trial court to impose a combined sentence of a fine and incarceration. Appellant's unprovoked action caused physical damage to Clifford's property, placed Clifford and William in danger, and caused them to fear for their lives and safety. Based on Bacon, supra, the trial court complied with R.C. 2929.22 in sentencing appellant. As such, there is no abuse of discretion. Therefore, appellant's first assignment of error is without merit.
 {¶ 32} In his second assignment or error, appellant argues that where there is insufficient proof of any element of a crime, a conviction must be reversed as against the manifest weight of the evidence.
 {¶ 33} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 34} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the [trier of fact], while `manifest weight' contests the believability of the evidence presented.
 {¶ 35} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 36} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 37} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 38} In the case sub judice, the state presented credible evidence of appellant's guilt. Appellant even admitted in his testimony that he could understand, based on the circumstances, that Clifford and William would have felt threatened. There is no evidence in the record, other than appellant's testimony, that he was provoked. Even Burke's testimony, the only independent witness, supports the statements made by the state's witnesses rather than appellant's version. Thus, pursuant toSchlee and Thompkins, supra, the trier of fact did not clearly lose its way by determining that appellant was guilty of criminal damaging and aggravated menacing. Therefore, appellant's second assignment of error is without merit.
 {¶ 39} In his third assignment of error, appellant argues that the trial court improperly failed to convict him of lesser included offenses. Appellant specifically contends that he should have been convicted for either menacing or disorderly conduct rather than aggravated menacing. We disagree.
 {¶ 40} R.C. 2903.21 states that:
 {¶ 41} "(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *.
 {¶ 42} "(B) Whoever violates this section is guilty of aggravated menacing * * *."
 {¶ 43} According to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 44} In the instant matter, on June 12, 2000, appellant jumped in his truck, tailgated Clifford's vehicle for at least one mile, in excess of the speed limit, pulled in front of the car, and forced Clifford to turn onto the berm. Appellant then exited his truck, screamed obscenities and made threats to Clifford and William, ran over to Clifford's car, and tried to get into it. Because both Clifford and William feared for their safety, they quickly locked the doors. Appellant caused significant damage to Clifford's car, namely breaking off the windshield wiper and shattering the front windshield.
 {¶ 45} William testified that later that same day, appellant told him that the next time he would not be walking away. Clifford also stated that appellant made threats to him as well. Burke testified that he was attracted to the noise outside of his home which caused him to look out his bedroom window. Burke heard appellant speaking in a loud and angry voice and saw him run over to Clifford's car with his arms raised in the air. Thus, Burke's testimony provided sufficient corroboration that this incident occurred in a manner consistent with the testimony of Clifford and William.
 {¶ 46} The foregoing evidence establishes that appellant knew what he was doing. Appellant intended to cause physical damage to Clifford's vehicle as well as cause Clifford and William to believe that he would cause them serious physical harm. Appellant even admitted that he could understand, based on the circumstances, that Clifford and William would have felt threatened. Therefore, based on R.C. 2903.21, the trial court properly convicted appellant of aggravated menacing. Thus, appellant's third assignment of error is without merit.
 {¶ 47} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Chardon Municipal Court is affirmed.
Judgment affirmed.
JUDITH A. CHRISTLEY and CYNTHIA WESTCOTT RICE, JJ., concur.